UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

PAMELA CARVEL,

               **Plaintiff,**

    - against -

ELEANOR SCARPINO;  EVE
MARKEWICH, individually and as a
partner of BLANK ROME LLP;  FRANK
STRENG, individually and as a partner of
McCARTHY FINGAR LLP;  DEBORAH
McCARTHY; JOEL AURNOU; WILLIAM
GRIFFIN, individually and as co-owner of
HUDSON VALLEY BANK;  ANTHONY
SCARPINO, individually; and JOHN/JANE
DOE, DOE COMPANY 1-20,

              **Defendants.**

------------------------------------------------------X

**OPINION AND ORDER**

**08 Civ. 3305 (SAS)**



SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

       Plaintiff Pamela Carvel ("Carvel" or "plaintiff"), proceeding pro se,

initiated this action on April 2, 2008.  This case, and five other cases, were filed as

related to *Anderson v. State of New York*, 07 Civ. 9599 (SAS).[1]  On July 31, 2008,

---

[1]     *See Esposito v. State of New York*, 07 Civ. 11612 (SAS); *Bernstein v.
Appellate Div. First Dep't Departmental Disciplinary Comm.*, 07 Civ. 11196
(SAS); *McKeown v. State of New York*, 08 Civ. 2391 (SAS);  *McCormick v. State
of New York*, 08 Civ. 4438 (SAS); and *Capogrosso v. New York State Comm'n on*

plaintiff filed an Amended Complaint (hereinafter the "First Amended Complaint" or "FAC"), wherein she renamed some of the original defendants and added other defendants, including William Griffin and Westchester County Surrogate Anthony Scarpino. This Court dismissed the instant action, *sua sponte*, in an Opinion and Order dated August 8, 2008.[2] Carvel appealed to the Second Circuit which issued a Summary Order on March 12, 2010, affirming in part, vacating in part, and remanding the case to this Court.[3] The Second Circuit affirmed the dismissal of Carvel's First Amended Complaint in all aspects but one, stating as follows:

> we cannot affirm the District Court's dismissal of plaintiff's conspiracy allegations under § 1983. Plaintiff alleges a "strong appearance of bribery" surrounding $400,000 in loans given to Justice Scarpino. Although

---

*Judicial Conduct*, 08 Civ. 5455 (SAS).

[2]     *See Esposito v. New York*, Nos. 07 Civ. 11612, 08 Civ. 2391, 08 Civ. 3305, 08 Civ. 4438, 08 Civ. 5455, 08 Civ. 6368, 2008 WL 3523910 (S.D.N.Y. Aug. 8, 2008). *Petrec-Tolino v. State of New York*, 08 Civ. 6368 (SAS), was also dismissed. *Bernstein* was decided in a separate Opinion and Order, also dated August 8, 2008. *See Bernstein v. New York*, 591 F. Supp. 2d 448, 470 (S.D.N.Y. 2008) (granting defendants' motion to dismiss, dismissing remaining defendants *sua sponte*, and denying leave to amend). *Carvel, McCormick, Capogrosso*, and *Petrec-Tolino* were dismissed *sua sponte* while *Esposito* and *McKeown* were dismissed pursuant to motions to dismiss. On appeal, the Second Circuit dismissed the appeal in *Bernstein* and affirmed this Court in *Esposito, Capogrosso, McKeown* and *Petrec-Tolino* by Summary Order. No appeal was taken in *McCormick*.

[3]     *See Carvel v. New York*, No. 08-4576-CV, 2010 WL 889326, at *2 (2d Cir. Mar. 12, 2010).

Justice Scarpino enjoys the benefit of absolute judicial immunity from that claim, the other defendants involved in the alleged "bribery" scheme do not. *See Dennis v. Sparks*, 449 U.S. 24, 28-29 (1980). Because the District Court did not explicitly address this claim before dismissing it *sua sponte*, we lack a basis on which to affirm its dismissal. We therefore vacate the dismissal with respect to the "bribery" claim and remand for the District Court to address the claim in the first instance.[4]

On remand, plaintiff was granted leave to replead her conspiracy claim under 42 U.S.C. § 1983[5] ("section 1983") – and only that claim – against the "Individual Defendants."[6] The Supplemental Order noted the following deficiencies in plaintiff's allegations:

---

[4]   *Id.* at *1 (non-case citations omitted).

[5]   Section 1983 states as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[6]   *See Carvel v. New York State*, No. 08 Civ. 3305, 2010 WL 1404154 (S.D.N.Y. Apr. 6, 2010) (the "Supplemental Order"). The "Individual Defendants" include Eve Markewich, Frank Streng, Deborah McCarthy, Joel Aurnou, and William Griffin. *See id.* at *4.

3

> In sum, the remaining Individual Defendants could . . . be deemed to be state actors if there is a sufficient factual basis to conclude that they conspired with Justice Scarpino, or any other state actor, to deprive plaintiff of a constitutional right. However, the Complaint fails to adequately plead how plaintiff was deprived of her property without due process and what the Individual Defendants allegedly did, with whom, when, and what corresponding constitutional injury it caused.[7]

Accordingly, Carvel was directed to include, in her second amended complaint, "specific factual allegations, consistent with this Supplemental Opinion and Order, detailing the various conspiracies in which each of the Individual Defendants allegedly engaged and that resulted in a constitutional violation."[8]

Instead of complying with the Supplemental Order, Carvel filed a 281-paragraph "Amended Complaint" (hereinafter the "SAC") on May 6, 2010. The SAC, which sets forth four conspiracy claims in Counts One through Four, violates the Supplemental Order in a number of ways. For example, Carvel re-alleged some claims that were dismissed without leave to replead and reasserted claims against Westchester County Surrogate Anthony Scarpino, whom the Second Circuit held was shielded from suit under the doctrine of absolute judicial

---

[7]     *Id.*

[8]     *Id.* After outlining the elements of a section 1983 conspiracy claim, I further instructed that a plaintiff who wishes to bring such a claim must also allege a violation of a federal constitutional right. *See id.* at *2 (stating that "to survive a motion to dismiss, a plaintiff must allege a constitutional deprivation").

4

immunity. In addition, plaintiff named Scarpino's wife, Eleanor Scarpino, as a defendant.[9] Finally, in asserting her section 1983 conspiracy claims, Carvel simply restated the identical factual allegations set forth in the FAC without sufficient elaboration. By doing so, plaintiff has ignored the clear direction of this Court and has demonstrated a continued inability to properly plead a "plausible" section 1983 conspiracy claim.

The Individual Defendants filed three motions to dismiss plaintiff's SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[10] Plaintiff opposed each motion to dismiss with a separate memorandum,[11] to which

---

[9]    On August 2, 2010, I issued an Order dismissing the newly asserted claims against Anthony Scarpino and his wife, Eleanor Scarpino.

[10]    *See* Memorandum of Law in Support of Defendant Griffin's Motion to Dismiss ("Griffin Mem."); Memorandum of Law in Support of Defendant Eve Rachel Markewich's Motion to Dismiss the Complaint ("Markewich Mem."); and Defendants' (Frank Streng, Joel Aurnou, Deborah McCarthy and McCarthy Fingar LLP) Memorandum of Law in Support of Motion to Dismiss ("McCarthy Mem.").

[11]    *See* Memorandum of Law & Plaintiff's Opposition to Magoolaghan's Motion for Summary Judgment or Dismissal with Prejudice with Fees and Costs; and Memorandum of Law & Plaintiff's Opposition to Hinshaw's Motion for Summary Judgment or Dismissal with Prejudice; and Plaintiff's Memorandum of Law in Opposition to McCarthy Fingar's Summary Judgment Dismissal. Because this Court did not convert the motions to dismiss into motions for summary judgment, plaintiff's reference to summary judgment is incorrect. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). To the extent that any party submitted evidence outside of the pleadings, such evidence was disregarded

the Individual Defendants replied.  For the reasons stated herein, plaintiff's SAC is

hereby dismissed with prejudice and without leave for further amendment.

## II.   BACKGROUND[12]

Thomas Carvel died in New York in 1990 while Agnes Carvel died in

London in 1998.

> In 1988 Thomas Carvel and his wife Agnes executed
> identical wills.  The wills created a testamentary trust for
> the benefit of the surviving spouse, the income of which
> was to be paid to the surviving spouse and the remainder to
> Thomas and Agnes Carvel Foundation (hereinafter the
> Foundation [or "TAF"]), the sole residuary beneficiary.  In
> addition, Thomas Carvel and Agnes Carvel entered into a
> reciprocal agreement in which they agreed that the
> surviving party to the agreement would not, subsequent to
> the death of the other party, make "gratuitous" transfers or

---

by the Court.  *See infra* Part III(A).  Accordingly, the documents included in plaintiff's Appendix of Exhibits Common to All Motions, except for the judicial decisions included therein, were excluded from consideration.

[12]   This section is provided to give context to the instant claims vis-à-vis Carvel's litigation odyssey through the Surrogate's Courts, state and federal courts, and the High Court of Justice, Chancery Division, in London, England (the "High Court").  In short, Pamela Carvel is a sophisticated litigator who has taken every opportunity she can to: (1) get her hands on the estates of her late uncle and aunt, Thomas and Agnes Carvel, to which she is not legally entitled; and (2) harass, with vexatious and frivolous lawsuits, those individuals who have thwarted her attempts to misappropriate said funds.  Most of this section is taken from the Report and Recommendation of Magistrate Judge Michael H. Dolinger in *Thomas and Agnes Carvel Foundation v. Carvel*, No. 09 Civ. 5083, 2010 WL 3303777 (S.D.N.Y. Aug. 20, 2010) (hereinafter "*TACF v. Carvel*"), adopted by the Honorable Jed S. Rakoff in an Order dated November 24, 2010.

in any way change the provisions of his or her will.[13]

Under the terms of the mirror-image wills, Pamela Carvel was given a specific bequest of $20,000.00, but she was not named residuary beneficiary under either will.[14]

The Surrogate's Court of Westchester County took jurisdiction over the estate of Thomas Carvel when he died in 1990.[15] Under Thomas Carvel's will, Agnes Carvel and Pamela Carvel were appointed co-executors of his estate, along with five other individuals.[16] Acting as co-executor, "Pamela Carvel transferred more than $2 million from the estate of Thomas Carvel into a London account in her own name and that of her aunt, and did so without notice to the other co-executors of the Thomas Carvel estate."[17] Because of Carvel's misconduct in

---

[13]    *In re Carvel*, 769 N.Y.S.2d 402, 402-03 (2d Dep't 2003).

[14]    Accordingly, the presumption that Carvel was a beneficiary of Agnes Carvel's estate is correct to the extent of this $20,000.00 bequest. Any attempt by Carvel to suggest a greater interest in the estate of either Thomas or Agnes Carvel is disingenuous. *See, e.g.,* SAC ¶ 24 ("Pamela Carvel as fiduciary was entitled to indemnification of all legal fees and administrative expenses from funds in the Estate of Thomas Carvel since 1990, the Estate of Agnes Carvel since 1998, and since Agnes' death from the so-called 'Agnes Carvel 1991 Trust', alleged to be a Florida grantor trust.").

[15]    *See TACF v. Carvel*, 2010 WL 3303777, at *2.

[16]    *See id.*

[17]    *Id.*

connection with the unauthorized transfer of estate assets into her London account,

the Surrogate suspended Carvel as co-executor of Thomas Carvel's estate.[18]

Undeterred by her suspension, Carvel continued in her attempts to

misappropriate estate assets.

> Only two days after the issuance of the Surrogate's order
> suspending both Pamela and Agnes Carvel as fiduciaries of
> the estate and trust of Thomas Carvel and appointing a
> guardian *ad litem* for Agnes Carvel, Pamela's aunt
> executed a new will, naming her niece as sole executor.
> Under the terms of the will, she bequeathed her residuary
> estate to the confusingly named Carvel Foundation, a
> Florida not-for-profit corporation of which Pamela Carvel
> was the founding director (hereafter "the Florida
> Foundation"). In substance, this will purported to change
> the residual beneficiary from the TAF – as specified in the
> will contract between Agnes and Thomas Carvel – to a
> corporation apparently controlled by Pamela Carvel.[19]

After Agnes Carvel's death, Pamela Carvel probated the 1995 will in

the High Court, which appointed her sole representative of Agnes Carvel's estate.[20]

However, the Foundation brought a proceeding in the Westchester County

Surrogate's Court to enforce the will contract between Thomas and Agnes

---

[18]    *See id.* at *3.

[19]    *Id.* (citations omitted).

[20]    *See id.*

8

Carvel.[21]

> On April 1, 2002, after a trial at which Ms. Carvel appeared and testified, the Westchester County Surrogate found that the 1995 Agnes Carvel will had violated the terms of the 1988 will contract between Agnes and Thomas Carvel, and he held that the TAF was entitled to the residual assets of the Agnes Carvel estate. The Appellate Division affirmed that decision in 2003.
>
> In the meantime, on June 13, 2003 Pamela Carvel filed a lawsuit in her own name in the Chancery Division of the High Court of Justice in London, suing herself as executor of the Agnes Carvel estate and claiming that the estate owed her personally £6,640,897.79, together with accrued interest of £1,148,827.90. In commencing this proceeding, she gave no notice to the TAF or to any fiduciaries of the Thomas Carvel estate. She also did not mention to the High Court that the 1995 will appointing her as executor had been set aside by the Westchester Surrogate.[22]

Without any opposition from the Foundation, the High Court entered judgment for

Carvel against her aunt's estate in the amount of £8,085,095.51, plus costs (the

"Chancery Judgment").[23]

---

[21]    *See id.*

[22]    *Id.* at *3-*4 (citations omitted).

[23]    After failed attempts by Carvel to enforce the Chancery Judgment, the High Court vacated the Judgment after the Foundation brought suit in the High Court. *See id.* at *5. The High Court issued two cost judgments against Carvel as the losing party. *See id.*

Meanwhile, the U.S. litigation continued.  Carvel asserted

counterclaims in the the *TACF v. Carvel* action wherein she alleged that

> Mr. Griffin, apparently in league with others, has stolen
> large portions of the assets of the Agnes Carvel estate, and
> used some of those funds to bribe judges and lawyers "to
> aid and abet the written fraudulent intent to transfer all
> Carvel family assets away from the control of the Carvel
> family as rightful asset owners"; [and] that bribery by Mr.
> Griffin and others also triggered the refusal of the trustees
> of the Agnes Carvel 1991 Trust to honor Pamela Carvel's
> claims for compensation from the estate of more than $18
> million in expenses that she had borne; . . . that she filed
> claims for $16 million against the "ancillary
> administration" of her aunt's estate but those claims were
> ignored by the Surrogate because he had been bribed by
> Griffin; [and] that the lawyers for the Agnes Carvel estate
> ignored her claims because they too had been bribed . . . .[24]

In recommending that the Foundation's motion to dismiss Carvel's counterclaims

be granted, Judge Dolinger stated:

> The bulk of plaintiff's allegations consist simply of
> conclusory assertions that various unnamed individuals, as
> well as defendant Griffin, have engaged in illegal or
> fraudulent behavior involving the assets of the Agnes
> Carvel estate, the funds of the TAF, and the *bona fides* of
> the TAF, and that they have conspired in some way to
> prevent Ms. Carvel from being reimbursed for her
> estate-related expenses and from collecting huge sums that
> represent either assets supposedly assigned to her by her
> aunt or unidentified legal claims that she has against the
> TAF, Mr. Griffin and others.  These assertions are pitched
> at such a level of generality that they offer little or no

---

[24]    *Id.* at *23 (citations omitted).

indication of what the factual basis is for the labels that plaintiff affixes to them. Moreover, to the extent that she seems to allege that Griffin and others engaged in fraud, her allegations fail in all respects to comply with the requirements of Fed.R.Civ.P. 9(b). Furthermore, to the extent that some of these claims are even remotely recognizable [sic], facts of which we may take judicial notice demonstrate their lack of basis. As a separate matter, to the extent that Ms. Carvel is complaining about the disposition of estate assets, her claims have repeatedly been adjudicated by various courts, including notably in the Westchester County Surrogate's Court. . . . As for her other claims of misconduct by the defendants or others, these too have been addressed in one form or another by other courts and have been rejected.[25]

With regard to Carvel's claims of alleged bribery of Surrogate Scarpino by Griffin

and others, Judge Dolinger further noted:

Ms. Carvel next accuses some mostly unidentified individuals, and perhaps the TAF, of bribing the judges who ruled against her in the many cases that she has lost. The one specifically articulated allegation in this respect is that Mr. Griffin or someone on his behalf (and acting for either the TAF or the Hudson Valley Bank) bribed Surrogate Scarpino. This assertion is made without the slightest factual grounding, and for this reason alone cannot be deemed a plausible claim within the meaning of *Iqbal* and *Twombly*. As the Second Circuit has noted, under the pertinent Supreme Court precedent "[the] pleader [must] amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009). Ms. Carvel's

---

[25]    *Id.* at *24 (footnote omitted).

bribery claim – which reflects an attempt to avoid the effect of a prior court decision later upheld on appeal and followed by various other courts – is surely a claim that demands application of such an amplified-pleading requirement, and yet she fails to provide it.

It also bears noting that Ms. Carvel has used these same bribery allegations as a basis for seeking to preclude reliance by other courts on the Surrogate's 2002 decision holding that the TAF was the residual beneficiary of the Agnes Carvel estate. Those courts have uniformly rejected her efforts.[26]

The Court noted the inadequacy of Carvel's conclusory allegations in light of her "gross misconduct in seeking court rulings."[27]

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss

The question at hand is whether plaintiff's allegations meet the plausibility standard set forth by the Supreme Court.[28]  In deciding a Rule 12(b)(6) motion to dismiss, a court must "accept as true all of the factual allegations

---

[26]     *Id.* at *26-*27 (footnotes and parallel citations omitted).

[27]     *Id.* n.32 ("Indeed, a review of the nature of the underlying claims that Ms. Carvel has pursued in other courts, as well as the judicially noticeable record of her gross misconduct in seeking court rulings, amply establish that these conclusory accusations are likely to be transparent fabrications.").

[28]     *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

12

contained in the complaint"[29] and "draw all reasonable inferences in [the]

plaintiff's favor."[30]  However, a court need not accord "[l]egal conclusions,

deductions or opinions couched as factual allegations . . . a presumption of

truthfulness."[31]  To survive a motion to dismiss, the pleading must contain

"sufficient factual matter, accepted at true, to 'state a claim to relief that is

plausible on its face.'"[32] "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."[33]  "The plausibility standard is not

akin to a 'probability requirement,' but it asks for more than a sheer possibility that

a defendant has acted unlawfully.[34]

---

[29]     *Twombly*, 550 U.S. at 572.  *Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[30]     *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[31]     *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

[32]     *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.")).

[33]     *Id.*

[34]     *Id.* (quoting *Twombly*, 550 U.S. at 556).

In deciding a 12(b)(6) motion, the court may not consider evidence offered by a party which is outside of the pleadings.  Rather, the court is limited to reviewing the four corners of the complaint, any documents attached to that pleading or incorporated in it by reference, any documents that are "integral" to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice.[35]  Judicial notice may encompass the status of other lawsuits in other courts and the substance of papers filed in those actions.[36]

In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[37]  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[38]  A

---

[35]     *See, e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Leonard F. v. Israel Disc. Bank*, 199 F.3d 99, 107 (2d Cir. 1999).

[36]     *See, e.g., Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003); *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86-87 & nn.3 & 4 (2d Cir. 2000); *Lefkowitz v. Bank of New York*, 676 F. Supp. 2d 229, 238-39 & n.1 (S.D.N.Y. 2009) (taking judicial notice of Surrogate's Court and state Supreme Court findings and decisions).

[37]     *Twombly*, 550 U.S. at 555.

[38]     *Iqbal*, 129 S. Ct. at 1950.

14

pleading that offers nothing but "labels and conclusions," "naked assertions" without "further factual enhancement," or a "formulaic recitation of the elements of a cause of action" will not suffice.[39]  This pleading requirement applies equally to pro se litigants.[40]

## B.   Conspiracy Under Section 1983

In order to survive a motion to dismiss a section 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between [two or more state actors or] a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."[41]  "Thus, a plaintiff must show that defendants acted in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated [his] rights, privileges or immunities secured by the Constitution or federal courts."[42]  "In addition, 'complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the

---

[39]     *Twombly*, 550 U.S. at 555, 557.

[40]     *See, e.g., Sheehy v. Brown*, 335 Fed. App'x 102, 104 (2d Cir. 2009) (dismissing pro se plaintiffs' section 1983 claims under *Iqbal*).

[41]     *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).

[42]     *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586-87 (S.D.N.Y. 2006) (quotation marks and citations omitted, alteration in original).

plaintiff of his constitutional rights are properly dismissed.'"[43]  While conclusory

allegations may be insufficient, "'conspiracies are by their very nature secretive

operations,' and may have to be proven by circumstantial, rather than direct,

evidence."[44]  Finally, "[a] violated constitutional right is a natural prerequisite to a

claim of conspiracy to violate such right."[45]  "Without deprivation of a federal

constitutional right, 'there can be no civil rights conspiracy to deprive that

right.'"[46]  Thus, to survive a motion to dismiss, the plaintiff must allege a

constitutional deprivation.

## IV.   DISCUSSION

### A.   William Griffin

In the Supplemental Order, this Court identified two sets of

---

[43]     *Ciambriello*, 292 F.3d at 325 (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (quotation marks, citations, and alteration omitted)).

[44]     *Pangburn*, 200 F.3d at 65 (quoting *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994)).

[45]     *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) ("Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights.").

[46]     *Bussey*, 419 F. Supp. 2d at 587 (quoting *Young v. County of Fulton*, 160 F.3d 899, 904 (2d Cir. 1998)).  *Accord Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (noting that a section 1983 conspiracy claim "will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right") (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

allegations that could possibly support a section 1983 conspiracy claim against Griffin: (1) the sale of the Ardsley Property; and (2) loans made by Hudson Valley Bank to Surrogate Scarpino.  Before delving into the merits of these allegations, I note that this Court lacks personal jurisdiction over Griffin because he was never served.  At the June 30, 2010 pre-motion conference, the Court informed the parties that the docket did not reflect that Griffin was ever served with the SAC.[47] Nor does the Affirmation of Service attached to the SAC show that it was mailed to Griffin.[48]  Without waiving any available defenses, Griffin's counsel agreed to accept service of process on his behalf.[49]  However, plaintiff never sent the SAC to Griffin's attorney.[50]  Thus, there is no proof that Griffin was ever served with the SAC, either personally or through  counsel.  Because this Court lacks personal

---

[47]     *See* Transcript of June 30, 2010 Conference ("Tr.") at 13 ("There's no proof of service on the docket.").

[48]     The Affirmation of Service completed by Kevin McKeown indicates that the SAC was mailed to the following parties: Philip Touitou, Esq. (on behalf of Markewich); Joseph J. Brophy, Esq. (on behalf of Aurnou, Streng, McCarthy and McCarthy Fingar); Anthony Scarpino; Eleanor Scarpino; and Deborah McCarthy.  Glaringly absent is any mention of Griffin or his counsel, Koob & Magoolaghan.

[49]     *See* Tr. at 13 (Koob: "We would be able to accept service as long as there's [the] understanding [that] there's no waiver.").

[50]     *See* Griffin Mem. at 11 (stating that "service was never effectuated upon counsel nor upon Mr. Griffin").

jurisdiction over Griffin, both individually and in his capacity as Chairman of Hudson Valley Bank, all claims asserted against him are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).  In an excess of caution, assuming that plaintiff can someday prove that she did in fact serve Griffin, I will assess the sufficiency of the allegations against him.

### 1.    The Ardsley Property

Before describing Griffin's alleged fraudulent conversion of the Ardsley Property, plaintiff states that her interest and standing in Agnes Carvel's real estate is threefold.

> First, Pamela Carvel is beneficiary of a Delaware Business Trust into which the properties and income therefrom were contributed.  Second, as creditor of Agnes Carvel's estate. Third, as the only adjudicated Member of the Thomas and Agnes Carvel Foundation.[51]

Plaintiff then describes Griffin's sale of Agnes Carvel's 16-acre Ardsley Property. Plaintiff claims that Griffin sold the Ardsley Property to Chauncey Partners, LLC for two million dollars even though it was worth somewhere between eight and ten million dollars.[52]  Chauncy Partners, in turn, somehow conveyed its interest in the Ardsley Property back to Hudson Valley Bank, where Griffin is chairman and

---

[51]    SAC ¶ 116.

[52]    *See id.* ¶ 117.

controlling shareholder.[53]  Thus, Griffin allegedly transferred the ten million dollar Ardsley Property to himself for only two million dollars.[54]  Plaintiff claims that this alleged fraudulent conversion "easily translates into deprivation of property by denial of due process."[55]

However, plaintiff has absolutely no property interest in the Ardsley Property.  Specifically, numerous federal, state, and foreign courts have all held that plaintiff is neither a remainder beneficiary nor fiduciary to the estate of either Thomas or Agnes Carvel.[56]  Plaintiff's claim that she has standing as a charitable beneficiary is similarly foreclosed by judicial determinations that the Foundation is the sole remainder beneficiary of the estates of Thomas and Agnes Carvel.[57] Finally, even as an alleged creditor, plaintiff fails to assert any relationship she has to the Ardsley Property.  In sum, plaintiff cannot establish any injury as a result of the sale of the Ardsley Property, whether above or below fair market value.

---

[53]     *See id.* ¶¶ 120, 134.

[54]     *See id.* ¶ 121.

[55]     *Id.* ¶ 132.

[56]     *See* Griffin Mem. at 8-9 (citing numerous cases in which plaintiff was a party).

[57]     *See id.*

19

Without an "injury in fact,"[58] plaintiff lacks standing to assert any claim involving Griffin's alleged misconduct regarding the sale of the Ardsley Property. And without standing, plaintiff does not have *any* viable claim in connection with the Ardsley Property, much less a plausible section 1983 conspiracy claim. Accordingly, plaintiff's claims against Griffin involving alleged misconduct in the sale of the Ardsley Property are dismissed.

### 2.    Loans by Hudson Valley Bank to Surrogate Scarpino

Despite the Second Circuit's holding that Surrogate Scarpino is immune to suit because of absolute judicial immunity, Carvel again names Surrogate Scarpino as a defendant, in his individual capacity only, and adds his wife, Eleanor Scarpino.[59]   In particular, plaintiff alleges that:

> Anthony Scarpino acted as a private citizen jointly with his wife Eleanor Scarpino to solicit or accept at least $400,000 in apparent bribes paid in the form of several alleged loans made by Hudson Valley Bank where William Griffin is chairman and controlling shareholder.  Griffin caused at least two loans to be issued just prior to trials in Carvel

---

[58]    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[59]    Both Surrogate Scarpino and his wife, Eleanor Scarpino, were dismissed from this case pursuant to a Court Order dated August 2, 2010 ("For the reasons stated on the record at the June 30, 2010 conference in this matter, in this Court's April 6, 2010 Supplemental Opinion and Order, and in the Second Circuit's March 12, 2010 Summary Order, all claims asserted in the [Second] Amended Complaint, dated May 2, 2010, against the Hon. Anthony Scarpino and Eleanor Scarpino are hereby dismissed.").

> matters where Griffin was a party and witness before Judge
> Scarpino in non-jury trials.[60]

Evidence of these loans consists of equity line of credit documents signed by

Surrogate Scarpino and Eleanor Scarpino and an officer of Hudson Valley Bank.[61]

In particular, plaintiff alleges that Anthony Scarpino was given a $100,000

campaign loan in 1999 in the amount of $100,000.[62]  According to plaintiff, "[t]his

'loan' appears to be a personal loan without security since it is not memorialized

by any equity loan agreement filed with the County Clerk."[63]  In October 2001,

Hudson Valley Bank extended a $200,000 loan to Anthony and Eleanor Scarpino,

jointly, consisting of an equity line of credit on the Scarpino's home which was

recorded with the Westchester County Clerk.[64]  This loan purportedly coincides

with the commencement of the first non-jury trial regarding the estate of Thomas

Carvel.[65]  Then, in December 2004, Hudson Valley Bank issued another equity line

---

[60]   SAC ¶ 52.

[61]   *See id.* ¶ 54.

[62]   *See id.* ¶ 56.

[63]   *Id.*

[64]   *See id.* ¶ 57.

[65]   *See id.*

of credit to the Scarpinos in the amount of $100,000.[66]  This loan purportedly coincided with the commencement of non-jury trials regarding the estate of Agnes Carvel.  Plaintiff alleges that none of the Individual Defendants, nor Surrogate Scarpino, ever revealed to her that Hudson Valley Bank gave Surrogate Scarpino "such timely loans in significant amounts just prior to non-jury trials."[67]

In sum, plaintiff claims that Griffin, through his control of Hudson Valley Bank, allegedly bribed Surrogate Scarpino so that he would refuse to disqualify or recuse himself[68] and thereby force Carvel to proceed on a motion for accounting and legal fees without legal representation.[69]  There are, however, several problems with plaintiff's theory.  First, the $100,000 loan to Scarpino in 1999 was made before Scarpino was elected Surrogate in 2001.[70]  Thus, Scarpino was not yet a state actor at the time the first loan was made.[71]  Second, the lines of credit extended by Hudson Valley Bank on the Scarpinos' home, totaling

---

[66]   *See id.* ¶ 58.

[67]   *Id.* ¶ 55.

[68]   *See id.* ¶ 60.

[69]   *See id.* ¶¶ 71, 75.

[70]   *See* Griffin Mem. at 21.

[71]   Accordingly, the rule announced in *Dennis v. Sparks*, 449 U.S. 24, 28-29 (1980) – that private parties who conspire with a judge are acting under color of state law for purposes of section 1983 – could not be applied to Griffin.

22

$300,000, were recorded with the Westchester County Clerk.  This recording cloaks the transactions with an air of legitimacy, not manipulation.  As correctly stated by Judge Dolinger, "the fact that a bank whose chairman is the president of the TAF offered a judge a home mortgage on what appears to be standard terms cannot support Ms. Carvel's extraordinary allegations of bribery."[72]  Nor has plaintiff alleged the "agreement," "acting in concert," and "overt act" elements of a section 1983 conspiracy claim.  Given plaintiff's lack of standing with regard to the Ardsley Property, she cannot rely on Surrogate Scarpino's alleged failure to take any action when presented with the Ardsley Property real estate scheme.[73]  In addition to failing to identify an overt act, plaintiff has similarly failed to show how the alleged bribery of Surrogate Scarpino affected her due process rights, with respect to a property interest or otherwise.  Without the requisite constitutional violation, plaintiff's allegations involving Griffin's purported bribery of Surrogate Scarpino do not support a plausible section 1983 conspiracy claim.  Accordingly, plaintiff's bribery allegations against Griffin must be dismissed.

---

[72]     *TACF v. Carvel*, 2010 WL 3303777, n.24.

[73]     *See* SAC ¶ 123.  That part of the Supplemental Order stating that "Scarpino's handling of this 'real estate scheme' may be a sufficient overt act done with the intention of causing plaintiff to be deprived of property without due process" 2010 WL 1404154, at *3, is obviously incorrect given plaintiff's lack of standing with regard to the Ardsley Property.

**B.    Eve Markewich**

Eve Markewich has been sued individually and as a partner of Blank Rome, LLP.  Plaintiff's allegations of Markewich's misconduct do not support a plausible section 1983 conspiracy claim for one simple reason: there is no state action.  Markewich is not a state actor, nor are there any allegations that she colluded with a state actor to deprive plaintiff of a constitutional right.  The following examples illustrate this glaring omission:

- Markewich failed to assert any claims on behalf of Agnes or Pamela Carvel because in 2001 Markewich entered into a written stipulation and covert verbal agreements with Griffin's lawyers, agreeing that Markewich would receive $3-4 million in legal fees without contest from the foundation fraudsters as long as Markewich obstructed all money from reaching Pamela, anyone assisting Pamela, or Agnes Carvel's estate in London, England.[74]

- Markewich failed and refused to recover corporate indemnification of legal fees for Agnes and Pamela equal to all other corporate officers and directors.[75]

- Markewich acted in collusion with [Leonard] Ross to steal Agnes Carvel's Tennessee personal property, belonging to Plaintiff Pamela Carvel in the form of over $40,000 in U.S. Treasury EE Bonds.[76]

---

[74]    SAC ¶ 87.

[75]    *Id.* ¶ 107.

[76]    *Id.* ¶ 111.

24

Because Carvel has failed to link any misconduct on the part of Markewich to any agreement or conspiracy with a state actor, her section 1983 conspiracy claims against Markewich must be dismissed.[77]

### C.   Frank Streng, Joel Aurnou, and Deborah McCarthy

Plaintiff's SAC devotes a separate section to the three McCarthy Fingar defendants.   I discuss plaintiff's conspiracy allegations against each defendant in turn.

### 1.   Frank Streng

Paragraphs 61 to 80 of the SAC attempt, unsuccessfully, to link Streng to a claim of unlawful cooperation with Surrogate Scarpino.  Throughout this section of the SAC, there are no references linking Streng to the alleged "bribery" and "$400,000 in loans" made to Surrogate Scarpino by Hudson Valley Bank.  Although plaintiff was directed to replead this specific claim, she has failed to include any relevant factual allegations against Streng in support of her section 1983 conspiracy claim.  Plaintiff fails to allege that Streng and Surrogate Scarpino, or any other state actor, reached any sort of agreement, much less one that violates plaintiff's constitutional rights.  The same deficiencies noted in the Supplemental

---

[77]     Carvel has also failed to identify which constitutional violation she suffered because of Markewich's conduct.  Either omission – no state actor or no underlying constitutional violation – is fatal to a section 1983 conspiracy claim.

Order — what was done, with whom, and when – remain in the SAC, which fails to plausibly allege how Streng, acting in concert with Surrogate Scarpino, deprived plaintiff of her constitutional rights.

At best, plaintiff attempts, to no avail, to create the appearance that Streng's involvement with the so-called "transition committee"[78] was the basis of his cooperation with Surrogate Scarpino. This alleged connection is both implausible and tenuous. Plaintiff alleges that Streng advertised on the Internet that he was "employed" on Surrogate Scarpino's "transition committee" and that such employment created a conflict of interest. However, a conflict of interest is very different from an "agreement" or "overt act" in furtherance of a conspiracy. While plaintiff may have sufficiently pled a conflict of interest,[79] she has failed to allege that Streng and Scarpino, working together, committed an overt act in an attempt to violate plaintiff's constitutional rights, whether in the "transition committee" or elsewhere.

---

[78]    SAC ¶ 61.

[79]    *See id.* ¶ 62 ("Since about 2001, this same Frank Streng alleged to represent Pamela Carvel as [a] client in numerous Carvel matters, allegedly in the jurisdiction of Surrogate's Court before Scarpino, without disclosing Streng's advisor relationship to Scarpino."); ¶ 70 ("In or about 2001, Streng entered Carvel litigation only when the matters in Thomas Carvel's estate were going to non-trial before Scarpino. Streng never disclosed his employment as advisor to Scarpino.").

Furthermore, plaintiff's attempt to use the withdrawal of McCarthy Fingar as the basis for her constitutional injury is misplaced. Plaintiff alleges that "Streng made a motion to withdraw McCarthy Fingar from representing Plaintiff in Thomas Carvel's estate, not Agnes Carvel's estate"[80] but "[w]ithout further proceedings, Scarpino and Streng used the withdrawal of representation in only Tom's estate to apply to representation in all *Carvel* matters, thereby depriving Plaintiff of due process."[81]  At most, these allegations may satisfy the elements of an attorney malpractice case but they do not represent a violation of constitutional rights. Plaintiff does not allege that the withdrawal of McCarthy Fingar effectively foreclosed her access to the courts. Nor can she given her right to represent herself in a pro se capacity and her demonstrated ability in doing so. Plaintiff cannot turn her state law negligence claim against McCarthy Fingar into a section 1983 conspiracy claim against Streng, purportedly acting in collusion with Surrogate Scarpino, by merely reciting the words "due process." And without a constitutional injury, there can be no conspiracy to deprive plaintiff of a constitutional right. Accordingly, plaintiff's conspiracy allegations against Streng must be dismissed.

---

[80]     *Id.* ¶ 75 (emphasis in original).

[81]     *Id.* ¶ 80.

27

### 2.    Joel Aurnou

Plaintiff devotes ten paragraphs in her SAC to Aurnou.[82]  In these paragraphs, plaintiff does not even recite the conclusory and formulaic term "conspiracy," which was done throughout most of the SAC, nor does she use the words "bribery" and "loan."  Instead, plaintiff merely criticizes the legal services provided by Aurnou.  Plaintiff's grievances range from failing to provide itemized invoices, to ignoring plaintiff's demands that he seek reimbursement on her behalf, to failing to copy litigation files.[83]  Plaintiff concludes that the deficiencies noted with respect to Aurnou's representation obstructed her "rights and ability to be professionally represented without bias."[84]  However, mere dissatisfaction with the quality of legal services cannot serve as the basis for a section 1983 conspiracy claim against Aurnou.  Simply put, there are no allegations against Aurnou, when read individually or in light of the entire SAC, that can be interpreted to allege a plausible conspiracy claim against Aurnou.  Accordingly, any and all allegations against Aurnou in the SAC are hereby dismissed.

### 3.    Deborah McCarthy

---

[82]    *See id.* ¶¶ 138-147.

[83]    *See id.* ¶¶ 138, 142, 144, 146.

[84]    *Id.* ¶ 147.  Plaintiff again states the illusory right to have the counsel of one's choice, or any counsel for that matter, in civil cases.

Paragraphs 148 to 162 of the SAC address McCarthy's conduct while

bandying about conclusory terms such as "organized enterprise" (¶ 150),

"collusion" (¶ 151), and "conspire" (¶ 154). As was the case with Aurnou, there is

no reference to the terms "bribery" and "loans" in this section. In addition to

complaining about having to pay for hours of alleged research and the failure to

produce documents as trial exhibits, plaintiff alleges the following:

> Deborah McCarthy and McCarthy Fingar comprise part of
> an organized enterprise of illicit influence peddling by
> Westchester County politicos including Griffin, Hudson
> Valley Bank, and other Defendants herein. McCarthy and
> her co-conspirators generate financial interests in fees for
> themselves in litigation designed to perpetuate Westchester
> County political corruption by denying all equal rights to
> Pamela Carvel and other asset owners (like Kevin
> McKeown) who attempt to fight against abuses.[85]

The passage above is a confused attempt by a desperate litigant to recite at least

some portion of a formulaic conspiracy claim. However, plaintiff does not even do

this much as she has failed to even remotely allege state action, an agreement to

conspire, or a constitutional violation. Furthermore, although plaintiff speculates

that McCarthy's new position with the State Attorney General was a payoff for her

role in some alleged conspiracy,[86] there are simply no allegations linking McCarthy

---

[85]     *Id.* ¶ 150.

[86]     *See id.* ¶ 151 ("On information and belief, McCarthy's current job at
the Charities Bureau of the Attorney General's office was part of McCarthy's pay-

to a state actor or a conspiratorial agreement to bribe a judge or inflict some other constitutional injury. Thus, plaintiff's conspiracy allegations against McCarthy are hereby dismissed.

### D.    Leave to Amend

Plaintiff has filed two amended complaints. The SAC was drafted after this Court instructed plaintiff on what was needed to state a cognizable conspiracy claim. Despite this precise direction, plaintiff has again failed to plead a plausible conspiracy claim. It does not appear that plaintiff will ever be able to do so. "Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend."[87] Given the apparent futility of any further amendment, plaintiff's conspiracy claims against the Individual Defendants are hereby dismissed with prejudice and without further leave to amend.[88]

---

off for her collusion against the interests of Plaintiff.").

[87]    *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962) (denial of leave was not an abuse of discretion where amendment would be futile)).

[88]    Now that plaintiff's federal claims have been dismissed, this Court declines to exercise supplemental jurisdiction over the state law claims raised in Counts 5 through 8, which are in direct violation of the terms of the Supplemental Order in any event.

### E.      Assessment of Costs and Attorney's Fees/Filing Injunction

The McCarthy Fingar defendants request "that a filing injunction be granted as to bar Plaintiff from commencing an action in the courts of the Southern District of New York against the McCarthy Fingar Defendants without prior court permission."[89]  To the extent that the filing injunction imposed by Judge Rakoff does not encompass the McCarthy Fingar Defendants, a similar filing injunction is hereby imposed, as follows:

Pamela Carvel is hereby permanently enjoined from filing any new lawsuit against any of the Individual Defendants named herein, in the Southern District of New York, that seeks money damages or any other relief on the basis that the Individual Defendants caused plaintiff to suffer a constitutional injury without first obtaining leave of court in accordance with the following conditions:

(1)(A)  Pamela Carvel shall file with the complaint of any new action a motion captioned "Motion Pursuant to Court Order Seeking Leave to File;

(B) Pamela Carvel shall attach, as an exhibit to the motion, a copy of this Order;

(C) Pamela Carvel shall also attach, as an exhibit to the motion, an attestation under penalty of perjury that she has:

(i) complied with Rule 11 of the Federal Rules of Civil Procedure; and (ii) has complied with the conditions of this injunction;

(2)      Any initial filing that does not include an attestation

---

[89]      McCarthy Mem. at 17.

31

that complies with the requirements of subdivision (C) shall
be summarily dismissed pursuant to the terms of this
injunction; and

(3)     Any initial filing that does not comply with the terms
of this injunction may subject plaintiff to an award of
attorney's fees and costs, sanctions, and/or citation for
contempt of Court.

In addition, Griffin seeks an award of attorney's fees and costs on the

ground that the SAC was filed in bad faith to coerce money from him and to harass

him with vexatious and groundless litigation.[90]  While I am sympathetic to

Griffin's plight, and that of the remaining Individual Defendants, I decline to

impose this sanction on Carvel at this time.  I decline to do so because Carvel was

only recently put on notice that such sanctions could and would be imposed by this

Court.  However, the entire Court, including the Court's Pro Se Office, will be

made aware of the filing injunctions imposed herein and by Judge Rakoff.  If

Carvel violates the terms of the instant filing injunction, she will face sanctions

commensurate with her "utter disregard both for legal constraints and for basic

factual accuracy."[91]

---

[90]     *See* Griffin Mem. at 23.

[91]     *TACF v. Carvel*, 2010 WL 3303777, at *32.

## V.    CONCLUSION

For the reasons stated above, plaintiff's SAC is dismissed, with prejudice, in its entirety.  The Clerk of the Court is directed to close the instant motions to dismiss (Documents # 28, 31 and 35) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          December 16, 2010

33

**- Appearances -**

**Plaintiff (Pro Se):**

Pamela Carvel
110 West Ninth Street
Suite 177
Wilmington, DE 19801-1618
(954) 524-1909

**For Defendant Griffin:**

Joan Magoolaghan, Esq.
Koob & Magoolaghan
221 Devoe Avenue
Yonkers, NY 10705
(914) 964-8888

**For Defendant Markewich:**

Philip Touitou, Esq.
Hinshaw & Culbertson LLP
780 Third Avenue, 4th Floor
New York, NY 10017
(212) 471-6211

**For McCarthy Fingar Defendants:**

Joseph J. Brophy, Esq.
Dina M. Aversano, Esq.
McCarthy Fingar LLP
11 Martine Avenue, 12th Floor
White Plains, NY 10606
(914) 946-3700